**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ROY B. BARBER,**

        **Plaintiff,**

-vs-                                                                                      **Case No. 6:09-cv-85-Orl-31DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Although Plaintiff did not waive oral argument, the Court does not find argument would be helpful to resolution of the issues in the case.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on July 12, 2006, alleging an onset of disability on December 20, 2005, due to depression, anxiety, bi-polar, degenerative disc disease, hepatitis C, bulging vertebrae in neck, cirrhosis of the liver, hypertension, and pain in leg, the knee, the joints, and in the left shoulder. R. 25, 27, 29, 34-35, 46-47, 85-92, 96, 137, 140. His

application was denied initially and upon reconsideration. R. 52-66. Plaintiff requested a hearing, which was held on March 12, 2008, before Administrative Law Judge Chester F. Senf (hereinafter referred to as "ALJ"). R. 18-37. In a decision dated July 2, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-17. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on November 14, 2008. R. 1-3. Plaintiff filed this action for judicial review on January 12, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was forty-seven years old at the time of the ALJ's decision. R. 85. He completed the tenth grade. R. 101. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a torn ligament in his left knee, fluid in his lower back, bi-polar disorder, depression, anxiety, high blood pressure, bulging vertebra in neck, and cirrhosis of the liver. R. 96. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative joint disease of the left knee, degenerative disc disease of the cervical and lumbar spines, and liver disease, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 12-13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of light work. R. 13. In making this determination, the ALJ found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC for the reasons set forth in the body of the decision. R. 14. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 16. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform

work existing in significant numbers in the national economy. R. 16-17. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 17.

Plaintiff now asserts four points of error. First, he claims the ALJ erred by rejecting the opinions of his treating psychiatrists in determining that Plaintiff's psychiatric conditions were not severe. Second, Plaintiff contends the ALJ erred by failing to consider the combined effect of all of Plaintiff's impairments. Third, he asserts that the ALJ erred by failing to find that Plaintiff met the Listing level (12.04) for affective disorders. Fourth, he argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments, and by failing to meet the burden of proof establishing Plaintiff could perform substantial gainful employment. For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III. ISSUES AND ANALYSIS

**A.  Severe mental impairment**

Plaintiff argues that the ALJ erred in determining that Plaintiff's psychiatric conditions did not meet the threshold requirement for severity and in rejecting the opinions from his treating

psychiatrists. The Commissioner argues the ALJ properly considered the evidence in the record in finding that Plaintiff did not have a severe mental impairment.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. [A severe impairment one which significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). Examples of basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).] In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

In finding that Plaintiff's mental impairments were not severe, the ALJ relied on the opinions of the state agency psychologists, which he found were consistent with the opinions and records of the consulting examiners and the records of Plaintiff's mental health treaters:

> Considering the record as a whole, the undersigned is also persuaded that the claimant has a bipolar disorder, depression, an anxiety disorder, and a history of polysubstance dependence in reported remission, and that they are not severe and result in only the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. In reaching these conclusions, the [ALJ] has considered the opinions expressed by the State agency psychologists, Dr. Ames-Dennard and Dr. Jensen with respect to the severity

of the claimant's mental impairments, and has afforded them great weight because they are consistent with the opinions and records of Dr. Rabinowitz, Dr. Vanderborg, and Dr. DeFilippo who had the benefit of actually examining the claimant. Also considered was the claimant's ability to work during the noted periods.

In October 2006 and December 2006, Dr. Ames-Dennard and Dr. Jensen, respectively opined that the claimant's mental impairments were not severe and resulted in only mild restrictions and difficulties. Similarly, in September 2006, a consultative examination performed by Dr. Rabinowitz revealed that the claimant had appropriate behavior and an intact memory, and that he related adequately in an interview situation. In October 2006, a consultative psychological examination performed by Dr. Vanderborg also revealed that the claimant had a dysphoric mood and a global assessment of functioning (GAF) score of only 50, but an intact memory, intact attention and concentration, fair insight and judgment, logical and goal-directed thought processes, an only somewhat restricted range of affect, and reports of paranoid ideation, but no clinical evidence of paranoia.

In November 2006, Dr. DeFilippo, a psychiatrist at Archway, found the claimant to be withdrawn, with paranoia, a blunted affect, tenuous judgment, racing thoughts at times, and depression with hopelessness, anxiety, and a worried mood, but also appearing cooperative, attentive, and with fair insight, good reliability, an unremarkable memory, normal language, use, clear low speech, normal eye contact, socially appropriate thought content, an average fund of knowledge, and no suicidal or homicidal ideation. Dr. DeFilippo also noted that the claimant became very uncomfortable and shaky only after he had stopped using his medication. Dr. DeFilippo further noted that the claimant had independent functioning in the community. Moreover, in forms completed by the claimant, in 2006, he stated that he could take care of his hygiene, wash dishes, and live with his fiancé. In addition, at the hearing, the claimant testified that he was never hospitalized for his mental impairments, and that he had been able to work despite having severe depression since his childhood. Thus, the undersigned affords great weight to the opinions expressed by the stat agency psychologists, Dr. Ames-Dennard and Dr. Jensen, and finds that the claimant's mental impairments are not severe.

\* \* \*

At the hearing, the claimant testified that he was impaired by depression. However, the claimant also testified that he had undergone only outpatient therapy and medication management, but was never hospitalized for his mental impairment. The claimant further testified that with medication, his rapid multiple daily bipolar cycles decreased in severity and length, curbed down to only once or twice a month.

R.12-13 (citations to SSR omitted).

Plaintiff argues that the ALJ erred in giving the greatest weight to the opinions of the state agency psychologists in determining that Plaintiff did not meet the severity requirement. He contends

that the ALJ's reasoning for giving more weight to the state agency physicians' opinions – that their opinions were consistent with the treating doctor's opinions – is flawed because they were strikingly different than those of the treating doctors.

Plaintiff contends that the ALJ should have given great weight to the opinion of Stephanie H. Ford, ARNP, who completed the Treating Source Mental Health Report, according to Plaintiff "under the supervision of Archways' doctors." Doc. No. 15 at 12. In the October 2006 Mental Health Report, Ms. Ford opined that Plaintiff was not capable of sustaining work activity for eight hours a day, five days a week due to lack of motivation, depression, anxiety and anhedonia, which were overwhelming with poor response to medications; he was not able to function socially. R. 251. She diagnosed Bipolar I Disorder and opined the prognosis was poor to guarded based on her observation and personal evaluation for two years. R. 251. She noted Plaintiff's mood alternating between depressed and anxious; worried as evidenced by flat or sad affect; poor eye contact; social isolation; hypersomnia; racing thoughts; hesitation; stuttering; fleeting thoughts of suicide; overwhelming fear of social situations; poor concentration and sequencing; memory impaired for immediate and recent - result of poor concentration and withdrawal; and daily occurrence of paranoia with periods of exacerbation from anxiety. R. 250-51. Dr. DeFilippo assigned Plaintiff a GAF score of 43 on November 15, 2006, and a GAF of 50 on February 15, 2006, which Plaintiff points out indicate serious symptoms or a serious impairment in social or occupational functioning. R. 276. Plaintiff testified to his depression and bipolar symptoms, and that with medication, his bipolar condition was down to a cycle of once or twice a month; however, there are side effects such as dry mouth, irritable bowel, and headaches[1]. R. 27-28, 32.

---

[1] Other medication only caused issues when it was discontinued and then retaken, which Plaintiff had done infrequently over a four to five year period. R. 32.

The Commissioner argues that Ms. Ford's opinions in the Mental Health Report are so extremely limiting that they are nothing more than a disability determination, which is reserved to the province of the Commissioner. Doc. No. 17 at 6-7. As an initial matter, the Commissioner is correct that because Ms. Ford is a nurse practitioner, she is not an acceptable treating source. *See* 20 C.F.R. §§ 404.1513; 416.913. As such, her opinion is not entitled any special evaluation or deference. 20 C.F.R. §§ 404.1527, 416.927. The Commissioner also argues that the medical records from Ms. Ford and Dr. DeFilippo at Archways do not provide any medical signs or laboratory findings to support her extreme opinion, which is inconsistent with the record as a whole. R. 189-210. The Commissioner argues that Plaintiff's unremarkable mental status findings do not establish that Plaintiff's mental condition would have affected his ability to perform basic work activities.

In this case, the records from Archways show Plaintiff was first seen at there in December 2003, at a point when he was still drinking alcohol heavily, and he had his drivers license suspended for the third time that year related to driving while intoxicated. R. 198, 202, 209. He had been working at Complete Pools for one year at that point. R. 207. Dr. DeFilippo diagnosed Plaintiff with depression in February 2004; Plaintiff reported that he had been depressed all of his life, but had never sought psychiatric treatment. R. 193. Plaintiff was 42 years old when interviewed; he reported having had a nervous breakdown at age 16 but never sought treatment at that time. R. 194. He stopped talking for a few months, dropped out of school, and did not leave his home for about two to three months; he stated that he was not sure what the cause of the breakdown was, but it could have been drug abuse or his parents' divorce (which happened when he was 12 years old - R. 298). R. 194. Plaintiff admitted to a legal history including assault and battery charges and possession of cocaine; he had also been involved in fights in bars; he admitted to 14 years of alcohol abuse, cocaine use for many years on and off (as late as 2002), and marijuana use for many years (up to 2003), with both last

used a few years before. R. 194-95, 202. Plaintiff's stream of thought was coherent and relevant, his affect appropriate, he was well oriented to time place, person, and situation; he reported his concentration, retention and recall were good to fair. R. 194.

The next records are from more than one year later, from April 2005, when Plaintiff's symptoms were slowly improving in response to re-initiating medication. R. 192. His insight and judgment were good, he had no delusions, his memory was unremarkable, fund of knowledge average, but his motivation was poor. R. 191. There is a summary of Plaintiff's diagnosis by Ms. Ford dated in February 2006, but there are no treatment notes. R. 189.

Plaintiff was treated at North Broward Hospital Emergency Room in February 2006 for chest pain after he had been doing drugs, and he was noted to be a longstanding drug abuser. R. 213, 218. Lab tests were positive for cocaine and cannabis at that time[2]. R. 222. Plaintiff's condition was diagnosed as cocaine abuse - continuous use, along with other conditions. R. 214. Although Plaintiff was supposed to be on various mental health medications, he had not been taking them for "a couple of months." R. 215. He was supposed to be followed by a clinic, however "recently he went there and he had to wait for a long time so he just left." R. 215. He was described as "drinking alcohol heavily" and "using cocaine." R. 216. Aside from the chest pain, "he denied any other problems." R. 216. The Emergency Room doctor, Dr. Nguyen, "advised the patient to stop smoking and also drinking and using cocaine as it may kill him." R. 217.

Despite the fact that Plaintiff told the ER doctor in February 2006 that he had not had his mental health medications in "a couple of months," and he had been abusing illegal drugs, he did not return to Archways until October 2006. R. 298. He had been discharged from Archways previously for non-compliance with monthly case management and medication management appointments. R.

---

[2]Plaintiff's representative at the March 12, 2008 hearing pointed out that a current urinalysis showed Plaintiff was still "clean." R. 22.

-9-

298. In October 2006, he told the interviewer at Archways that his non-compliance was due to "extreme anxiety and agoraphobia." R. 298. He acknowledged that "his symptoms improve when he is on medications" and he returned to Archways to help him access medications. R. 298. Plaintiff misleadingly told the Archways social worker who interviewed him that he had not used marijuana for five years, although he tested positive for it in February 2006. R. 298; R. 222. His abuse of quaaludes which he used heavily for three years in his late teens was "so severe that is caused him severe speech and cognitive defects," and "his inability to function led to his dropping out of school." R. 298.

Plaintiff represented being sober since June 2006. R. 299. He had not experienced a manic episode in two years. R. 299. He was able to complete residential living skills (other than finances, which his girlfriend took care of), although when he was depressed and in physical pain it made it hard for him. R. 299. By November 2006, when Plaintiff was once again seen at Archways, he admitted that he had stopped taking his medications prescribed by Archways and became "very uncomfortable." R. 276.

The inconsistencies in Plaintiff's reports to medical professionals are all the more significant given the opinion by the consultative examining psychologists, Jennifer Vanderberg, Psy.D. (also signed by Martin D. Segel, Ph.D.), in September 2006, that Plaintiff's reliability was "questionable considering the overwhelming inconsistencies between his reported symptoms" and Dr. Vanderberg's observations. R. 238. Plaintiff endorsed all psychological symptoms; however, according to the other medical records she reviewed, many of these symptoms were denied in the past. R. 237-38. "Despite the patient's cooperation and engagement, the validity and reliability of Mr. Barber's responses should be considered with extreme caution due to his over-endorsement of and inconsistencies between symptoms that were self-reported and observations made by this examiner." R. 238. "When asked

-10-

about his ability to complete tasks, he replied that he does not have any tasks because he is in too much pain to get up." R. 238. He reported thinking about suicide "all the time," although he reported no attempts. R. 239. Dr. Vanderberg further noted:

> Mr. Barber also stated that he experiences all symptoms of anxiety, including excessive worry, restlessness, fatigue, concentration problems, irritability, muscle tension and sleep problems. Reportedly, he experiences these symptoms "every day." When asked about history of panic, he state that he remembers having an attack on one or two occasions and endorsed the following symptoms, sweating, shakiness, shortness of breath, nausea, dizziness, derealization, fear of losing control, and chills. Reportedly, the patient has experienced persistent concern about having a panic attack for over one month. He stated that he experienced agoraphobia "today"; however, the patient did attend this appointment. Upon mentioning this to the patient, he stated, "well ya. But I was scared to leave the door." Mr. Barber added that he has social anxiety which is why he used to drink. Reportedly, his social anxiety has worsened since he has stopped drinking. After this examiner asked the patient if he ever experienced shortness of breath, he explained that he could not get his breath just as I was asking him that question. It should be noted that this examiner did not observe any symptoms of anxiety, panic or mania during this evaluation.

R. 240. The examining psychologist reported Plaintiff as alert and oriented to person, place, time and situation, and also noted Plaintiff's attention and concentration and recent memory were intact; Plaintiff's thought processes were logical and goal directed with no evidence of paranoia, hallucinations or delusional ideation. R. 240-41. Dr. Vanderberg's diagnostic impression included possible "malingering." R. 241.

The ALJ also relied on the opinions of two state agency psychological consultants, Sharon Ames-Dennard, Ph.D., and Sandra Jensen, in finding that Plaintiff did not have a severe mental impairment. R. 260-73, 301-14 (from October and December 2006). After reviewing Plaintiff's mental health records, both of the state agency psychologists opined that Plaintiff did not have a severe mental impairment. R. 260, 301. They both assigned mild functional limitations with no episodes of decompensation. R. 270, 311. Dr. Ames-Dennard accurately summarized the mental evidence of record, noting Dr. Vanderberg's diagnosis of Plaintiff with bipolar disorder, anxiety

-11-

disorder, polysubstance dependence and a rule/out of malingering. R. 272. Two months later in December 2006, the other state agency psychologist, Sarah Jensen, in an extremely detailed analysis opined that Plaintiff's statements about the allegations and limitations appeared partially acceptable. R. 313. "Namely, the degree of severity of dysfunction attributed to the alleged psychiatric symptoms seems inconsistent across with the objective MER. Impairment not severe: In spite of the identified MDI, the claimant retains basic self care skills, adequate social skills, and can concentrate on and execute basic tasks on a full-time work schedule with routine breaks for periods of rest for physical discomfort/fatigue." R. 313.

Plaintiff went long periods without any mental health treatment, whether due to drug or alcohol abuse, or other reasons, and worked during those time periods. Plaintiff's symptoms improved with medication. Although he testified at the hearing that he suffered bipolar cycles once or twice a month, he told the counselor at Archways that he had not had a manic episode in "two years." Based upon the consultative examination by Dr. Vandenberg, and the lack of supporting medical records from Ms. Ford, the ALJ concurred with state agency physicians who opined that Plaintiff's mental impairments were not severe. It is apparent that the ALJ carefully considered the evidence.[3] The medical and other evidence support the ALJ's determination that Plaintiff did not suffer a severe mental impairment.

### B. Combination of impairments.

Plaintiff contends that the ALJ erred in failing to consider the combined effect of all of Plaintiff's mental health impairments when determining whether Plaintiff's psychiatric conditions met the severity requirement. The Commissioner responds that the ALJ thoroughly discussed the evidence

---

[3]Notably, in cases such as this one, the sifting and weighing of evidence that is subject to interpretation is the essential duty of the ALJ.

regarding all of Plaintiff's impairments and properly considered Plaintiff's impairments as a whole in evaluating his claim.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

Plaintiff contends that the ALJ failed to discuss the effect of the combination of Plaintiff's psychiatric impairments on each other and failed to address how the psychiatric impairments and physical impairments affect each other. He contends that the uncontroverted medical opinion is that Plaintiff's bipolar disorder was aggravated by his other psychiatric conditions. R. 251. He points to Archways' notes that paranoia occurs daily with exacerbation by anxiety and agoraphobia exacerbated symptoms of bipolar. R. 251. Plaintiff points to the very same Treating Source Mental Health Report by Ms. Ford (R. 250-51) that the Court has already found the ALJ had rejected based on substantial evidence above.

**C.    Listing**

Plaintiff contends that the ALJ erred in failing to find Plaintiff met the Listing 12.04 for affective disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The Commissioner contends that Plaintiff failed to meet his burden of proving that his impairments met or equaled Listing 12.04 or any other listed impairment.

-13-

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The Commissioner correctly points out that some of the evidence relied upon by Plaintiff is from December 2003 and February 2004 (R. 193-211) which is not from the relevant period before the ALJ; Plaintiff had alleged an onset date of July 12, 2006, after his previous application was denied by the Appeals Council on March 1, 2006. R. 9.

For the reasons discussed above in Section IIIA, the ALJ's finding that Plaintiff's mental impairments were not severe was based on substantial evidence; thus, the ALJ's finding that Plaintiff's mental impairments did not meet the listing for affective were also based on substantial evidence.

### D. Application of the grids

Plaintiff claims that the ALJ erred by applying the grids and by not requiring VE testimony because Plaintiff suffered from non-exertional impairments such as psychiatric problems and chronic pain from degenerative joint disease of the left knee, degenerative disc disease of the cervical and

lumbar spine, and liver disease. The Commissioner contends the ALJ properly determined that Plaintiff had the RFC to perform light work and correctly used the grids to find there was other work he could perform in the national economy.

Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of

employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

As explained above, the ALJ properly determined that Plaintiff did not suffer from severe mental impairments and these did not cause any functional limitations. The ALJ found that Plaintiff's impairments and resulting symptoms, including his alleged pain, limited him to light work. R. 13. The ALJ noted that he considered Plaintiff's alleged pain in assessing his RFC, but that the evidence did not show he could not perform light work:

> In 1993, the claimant was involved in a motorcycle accident in which two fingers of his left hand were severed and subsequently reattached. In June 2002, the claimant fell through a sewer hole and injured his back, neck, and left knee, as revealed by x-rays and magnetic resonance imaging.
>
> In a form completed by the claimant, in August 2006, he stated that he had constant daily intense pain in his lower back and neck, brought on by any movement, as well as by temperature extremes. At the hearing, the claimant also testified that he was impaired by daily pain from disc bulges in his neck, causing soreness in his left scapular muscles; and by constant lower back pain on movement, exacerbated especially by standing. The claimant further testified that his lower back pain affected his hips and from the back of his legs to his ankles, with frequent tingling in his left leg. Moreover, the claimant testified that he was impaired by his torn left knee ligament. Additionally, the claimant testified that he could lift only 10 pounds at a time with his right hand, but not with his left hand due to a hand disfigurement; stand for only less than 5 minutes at a time; walk for only 1 to 2 blocks at a time; and sit for only less than 1 hour at a time.
>
> The claimant, however, testified that he had not undergone surgery for his neck, lower back, or left knee. The claimant further testified that he had not used a back brace for 4 to 5 years; or a knee brace since the alleged disability onset date. Moreover, in September 2006, Dr. Rabinowitz found the claimant with 5/5 motor strength, intact sensations, normal reflexes normal manual dexterity, normal grip strength, and only mild left antalgic gait, as well as only positive supine, but negative sitting, straight-leg raise tests bilaterally. In addition, Dr. Rabinowitz found the claimant with no difficulty getting on and off an examination table.
>
> * * *
>
> Thus, after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the

> intensity, persistence, and limiting effects of these symptoms are not credible to the
> extent they are inconsistent with the residual functional capacity assessment for the
> reasons explained below.

R. 14.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the

-17-

testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ considered Plaintiff's physical impairments, including degenerative joint disease of the left knee, degenerative disc disease of the cervical and lumbar spine, and liver disease and resulting pain, and properly assigned an RFC for light work. R. 14-15.

The ALJ found that Plaintiff's activities of daily living or ability to function independently were not curtailed from pain. R. 15 (citing Plaintiff forms completed in 2006; Dr. DeFilippo's November 2006 notes). "Thus, the claimant's daily activities are not limited to the extent that one would expect from an individual totally disabled by pain. . . . [T]he evidence as a whole does not substantiate any good cause for such isolation and inactivity, apart from the claimant's own preference." R. 15. The ALJ also noted that the medical evidence failed to show that the claimant had been required to use an alternative treatment method, other than a TENS unit, for his pain that imposed limitations or restrictions by its frequency of treatment, duration, disruption to routine or adverse side effects since the alleged onset date. R. 15. While it was reasonable to conclude that Plaintiff had some limitations, the ALJ noted, "the evidence as a whole did not substantiate any cause for such debilitating limitations as described by the claimant that would preclude all work activity." R. 15. The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints based on the objective medical evidence. The ALJ's reasons included inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies between his statements and his activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Moreover, the ALJ's reasons are supported by substantial evidence.

The ALJ specifically found that Plaintiff's capacity for the full range of light work was substantially intact. R. 16-17. Because Plaintiff could perform unlimited types of work at the light

-18-

level, it was unnecessary to call a VE to establish whether he could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

### *IV. CONCLUSION*

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 3, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record